UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
ARNALDO SELVON,

    Plaintiff,

-against-

THE CITY OF NEW YORK and
POLICE OFFICERS JOHN DOE #1-4,
individually and in their official capacity
as New York City Police Officers (the
names "John Doe" being fictitious, as the
true names are presently unknown) and
KINGS COUNTY DISTRICT
ATTORNEY CHARLES J. HYNES,

    Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 13-CV-6626-FB-RML

*Appearances:*
*For the Plaintiff:*
ELLIE E. SILVERMAN, ESQ.
Novo Law Firm, PC
299 Broadway, 17th Floor
New York, New York 10007

*For the Defendants:*
VIRGINIA J. NIMICK, ESQ.
New York City Law Department
100 Church Street
New York, New York 10007

**BLOCK, Senior District Judge:**

    Arnaldo Selvan alleges that he was falsely arrested on armed robbery charges and subjected to repeated instances of excessive force during his resulting detention. He further alleges that he was maliciously prosecuted on the charges and deprived of his right to a fair trial. He asserted claims under 42 U.S.C. § 1983 and state law against the

City of New York ("the City"), the Kings County District Attorney ("KCDA") and four unnamed New York City police officers.

All defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Selvon has withdrawn all of his state-law claims, in addition to his federal claims of false arrest and deprivation of a fair trial.

Thus, only two claims remain: a § 1983 claim for malicious prosecution and a § 1983 claim for excessive force. With respect to those claims, defendants' motion to dismiss raises two issues:

1. Can Selvon still amend the complaint to identify the unnamed officer defendants?

2. Does the amended complaint adequately allege municipal liability under *Monell*?

The Court answers those questions in turn.

**1. Claims against "John Doe" Defendants**

Although a plaintiff may name an unknown defendant "John Doe" in his complaint, the practice "cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993). Thus, a plaintiff must either identify "John Doe" defendants within the statute of limitations or rely on the relation back doctrine embodied in Federal Rule of Civil Procedure 15(c).

Selvon alleges that the charges against him terminated on November 28, 2012. Thus, the three-year statute of limitation on his malicious prosecution claim does not expire until November 28, 2015. *See Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) ("It is clear from our precedents that the applicable statute of limitations for § 1983 actions in New York is three years . . . , and that, for claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated.").

Selvon further alleges that he was detained on Rikers Island until November 28, 2012. Since he alleges that he was subjected to excessive force throughout his detention on Rikers Island, his excessive claim will not be fully time-barred until November 28, 2015. It bears noting, however, that each passing day narrows the portion of the claim that falls within the three-year window.

Selvon argues that an amendment identifying the "John Doe" defendants might also relate back to the filing of his original complaint on November 27, 2013. In *Hogan*, the Second Circuit held that § 1983 plaintiffs can avail themselves of New York's relation back standard pursuant to Federal Rule of Civil 15(c)(1)(A), which allows relation back whenever "the law that provides the applicable statute of limitations allows relation back." *See* 738 F.3d at 518. That standard in set forth in N.Y.C.P.L.R. § 1024:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

New York courts have held that § 1024 allows substitution *nunc pro tunc* if two requirements are met. *See Hogan*, 738 F.3d at 518-19 (citing cases). First, the plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Id.* at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2005)). Second, the initial complaint must describe the John Doe defendant "in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* (quoting *Bumpus*, 883 N.Y.S.2d at 104).

The Court concludes that relation back is not applicable to Selvon's excessive force claims. He alleges that he was subjected to excessive force while detained at Rikers Island, which is operated by the New York City Department of Corrections. The John Doe defendants, however, are all identified as New York City *police officers*. Such an identification could not "fairly apprise" any corrections officer that he was an intended defendant.

## 2. Municipal Liability

All agree on the substantive standards for municipal liability: "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Both a municipality's failure to train its employees and its failure to supervise them can amount to an actionable "policy" if it demonstrates the municipality's deliberate indifference to the constitutional rights of those with whom its employees interact. *See City of Canton v. Harris*, 489 U.S. 378, 380 (1989) (failure to train); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127-28 (2d Cir. 2004) (failure to supervise).

Although the parties agree on the substantive standards, they disagree as to what allegations must support a claim for municipal liability at the pleading stage. Selvon relies on *Amnesty America*, in which the Second Circuit noted that a plaintiff "need only plead that the city's failure to train caused the constitutional violation" because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." 361 F.3d at 130 n.10 (citing *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992)). Defendants

argue that such conclusory pleading cannot satisfy the "plausibility" standard subsequently embraced by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Court agrees that *Twombly* and *Iqbal* apply. It does not follow, however, that Selvon's complaint does not satisfy the standards set forth in those cases.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As the Court has opined in an analogous context, *Twombley* and *Iqbal* require enough nonconclusory facts to support of reasonable inference of liability, but they do not require a plaintiff to plead a complete prima facie case. *See Winston v. City of New York*, 2014 WL 2957488, at *1 (E.D.N.Y. July 1, 2014) (applying *Twombley* and *Iqbal* to claim of employment discrimination).

Applying the same reasoning to *Monell* claims, the Court concludes that Selvon need not—at this stage, at least—allege all elements of a prima facie case of municipal liability.[1] Instead, he must simply allege facts that allow the Court to draw the

---

[1] Insofar as Selvon is proceeding on a failure to supervise theory, he must eventually demonstrate deliberate indifference "by showing that 'the need for more or better supervision to protect against constitutional violations was obvious,' but that [the municipal policymaker] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." *Amnesty Am.*, 361 F.3d at 127 (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). For failure to train, he must, in addition to offering evidence of deliberate indifference, "identify a specific deficiency in the city's training program and establish that that deficiency

6

inference that the constitutional violation was the result of a municipal policy of inaction, as opposed to "isolated misconduct by a single actor." *Amnesty Am.*, 361 F.3d at 130.

Selvon alleges generally that both the City and KCDA had "policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees," Am. Compl. ¶¶ 75, 79, and that policies "were a direct and proximate cause of the unconstitutional conduct alleged herein." *Id.* These allegations must, of course, be ignored. *See Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

With respect to malicious prosecution, Selvon's only allegations of fact are that he was charged and prosecuted for armed robbery, that no reasonable person could have believed that he had committed that or any other crime, and that, after a first trial resulted in a hung jury, he was acquitted. In other words, he alleges that he—and he alone—was maliciously prosecuted. "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). That is particularly true of prosecutors: "A district attorney

---

is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Id.* at 129 (quoting *City of Canton*, 489 U.S. at 391).

is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in 'the usual and recurring situations with which [the prosecutors] must deal.'" *Connick v. Thompson*, 131 S. Ct. 1350, 1363 (2011) (quoting *City of Canton*, 498 U.S. at 391).

The exception is if "the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 824. No such connection appears from Selvon's allegations. Thus, Selvon's *Monell* claim must be dismissed to the extent it is based on malicious prosecution.[2]

With respect to excessive force, by contrast, Selvon alleges that he was "continuously" subjected to "multiple" acts of physical force and punitive conditions of confinement "[t]hroughout the period of his imprisonment and/or detention." Am.

---

[2]Because the Court concludes that Selvon has not adequately alleged a municipal custom or policy regarding his prosecution, it need not grapple with the thorny issue of whether, and under what circumstances, the KCDA is a policymaker for the City. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("With respect . . . to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned."); *see also Jones v. City of New York*, 988 F. Supp. 2d 305, 314, 316 (E.D.N.Y. 2013) (calling City's liability for district attorney's policies "anomalous," but noting that "peculiarities in New York law require this puzzling result").

Compl. ¶ 92.[3] Though Selvon will eventually have to prove these allegations with greater specificity, they are sufficient, taken as true, for the Court to infer that his treatment during his confinement was the result of something more than a single officer's misconduct. It is at least plausible that the "something more" was a custom or policy of encouraging, condoning or turning a blind eye to the types of misconduct about which Selvon complains.

### 3. Conclusion

In sum, the motion is dismiss the malicious prosecution and excessive force claims against individual defendants is denied without prejudice to renewal should Selvon fail to replace the John Doe defendants with named officers before November 28, 2015. With respect to municipal liability, the motion is denied with respect to the excessive force claim, but granted with respect to the malicious prosecution claim.

**SO ORDERED.**

---

[3] As best the Court can glean, Selvon's "excessive force" claim is an amalgam of physical assaults by corrections officers, inmate-on-inmate violence and punitive use of solitary confinement. Each of those components has distinct constitutional roots. *See Deshaney v. Winnebego County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). For present purposes, however, they may be treated collectively.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 10, 2015